**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
**CIVIL DIVISION**

**WILLIAM T. WAUGH,**
Individually and as Personal
Representative of the Estate of
Mark Waugh,
207 Eaton Court
Great Falls, Virginia 22066

And

**NANCY M. WAUGH,**
Individually,
207 Eaton Court
Great Falls, Virginia 22066

Plaintiffs,

v.

**RAHUL GUPTA**
Serve:
Department of Corrections No. 438453
Western Correctional Institution
13800 McMullen Hwy. SW,
Cumberland, Maryland 21502,

Defendant.

Case No. 424774V

RECEIVED
SEP 09 2016
Clerk of the Circuit Court
Montgomery County, Md.

**COMPLAINT FOR MONEY DAMAGES**
**AND JURY DEMAND**

COME NOW Plaintiffs William T. Waugh, individually and as Personal Representative of the Estate of Mark Waugh, and Nancy M. Waugh, individually, and for their Complaint against Defendant Rahul Gupta, respectfully state as follows:

**Nature and Background of Case**

This is a wrongful death and survival action arising from Rahul Gupta's brutal murder of Mark Waugh ("Mark") on October 13, 2013. Mark was a bright, talented, beloved, 23-year old law student at Georgetown University Law Center with a bright

Exhibit 2.

future. Prior to the incident, Rahul Gupta (also referred to herein as "Rahul") and Mark were friends who had gone to Langley High School together, in McLean, Virginia. The evening of the incident, after going out with a group to celebrate Rahul's 24th birthday, and after Mark and Rahul returned to Rahul's apartment with Rahul's girlfriend and roommate Taylor Gould, Rahul stabbed and cut Mark eleven times, killing him. After responding Montgomery County police officers entered Mr. Gupta's high-rise apartment at 3:35 a.m., they found an empty vodka bottle on the counter, a butcher knife on the floor, and blood all over the place including the walls and ceiling. Mark was dead. A responding officer asked Gupta "What happened?" Gupta falsely stated: "My girlfriend and my buddy were cheating." He then stated: "I walked in on my girlfriend and my buddy cheating. I killed my buddy." In a later recorded jailhouse telephone call with his father, Rahul again admitted his involvement. When asked by his father about what had happened, Gupta said: "Mark and I got into a fight and he tried to get a knife and then I ... got the knife."

Mr. Gupta's actions tragically cut short Mark's life and took a beloved individual from his family.

**Parties**

1. Plaintiff William T. Waugh ("Mr. Waugh"), the decedent's father, is an adult resident of the Commonwealth of Virginia, residing at 207 Eaton Court, Great Falls, Virginia 22066. Mr. Waugh qualified as the personal representative of Mark Waugh's estate on August 17, 2016.

2. Plaintiff Nancy M. Waugh ("Ms. Waugh"), the decedent's mother, is an adult resident of the Commonwealth of Virginia, residing at 207 Eaton Court, Great Falls, Virginia 22066.

3. The decedent, Mark Waugh, was born on June 26, 1990. He was an Eagle Scout, a Champion debater, a Phi Beta Kappa, Magna Cum Laude Graduate of James Madison University, and at the time of his death, a law student at Georgetown University Law Center, in Washington, DC. At all relevant times, Mark was domiciled in Virginia. Mark was not married and had no children.

4. Defendant Rahul S. Gupta was born on October 13, 1989, and at the time of the incident giving rise to this case was an adult resident of Montgomery County, Maryland. Mr. Gupta is currently serving a life sentence for murder at the Western Correctional Institution, 13800 McMullen Hwy. SW, Cumberland, MD 21502.

**Jurisdiction and Venue**

5. This is a wrongful death action, brought pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 3-901 *et seq.* and Maryland Rule 15-1001, and a survival action, brought pursuant to Md. Code Ann., Est. & Trusts § 7-401(y), for damages arising out of the death of Mark Waugh, as a result of Defendant's wrongful acts and/or negligence.

6. The Court has subject matter jurisdiction over the claims set forth herein pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501 (2016).

7. The Court has personal jurisdiction over Defendant pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-102(a) and 6-103(b)(3) (2016), because he is being served process in Maryland and because he caused tortious injury in Maryland.

8. Venue in this action properly lies in the Circuit Court for Montgomery County, Maryland, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(8) (2016), because this cause of action arose in Montgomery County, Maryland.

**Facts**

9. Rahul and Mark both attended Langley High School, in McLean, Virginia, and up and until the incident, they were friends.

10. In October of 2013, Rahul, a graduate student at nearby George Washington University, in Washington, DC, was dating Taylor Gould. Taylor is 5'5" tall and approximately 125 pounds.

11. Rahul and Taylor started dating when they were both seniors at George Washington University. They had graduated in May, 2012. After that, Rahul began his graduate studies and Taylor worked for the FDA.

12. Rahul and Taylor lived together at what was previously Taylor's Silver Spring apartment, since February of 2013. In October 2013, Rahul and Taylor lived together in apartment 1601 of a high-rise apartment building known as The Blair East Apartments, located at 1220 East West Highway, Silver Spring, Maryland. The apartment was an efficiency and contained just one room.

13. On October 12, 2013, Rahul and Taylor went out for a steak dinner in Dupont Circle to celebrate Rahul's 24th birthday. Prior to going out, Rahul smoked marijuana and had several shots of vodka.

14. After dinner, the two met up with Mark and another of Rahul's friends, a friend from college named Josh White, to go bar hopping in Dupont Circle to celebrate further. Over the course of the night, the group visited James Hoban's Irish Restaurant and Bar, the Front Page, and Buffalo Billiards, all in the Dupont Circle area.

15. During the course of the evening as they were going from bar to bar, everyone in the group was drinking alcohol. Over the course of the night, Rahul, Taylor,

Mark, and Josh White reached varying degrees of intoxication. Rahul also smoked more marijuana while they were out.

16. At some point in the evening, Taylor was reportedly concerned that Rahul's friend Josh White was hitting on her. Josh White stated later that he believed she was flirting with him. Their interaction was eventually witnessed by Mark.

17. Taylor told Mark that she believed Josh White was hitting on her, and asked for Mark's help in determining what to do. The two discussed this outside the presence of the others. Ultimately, Mark confronted Rahul and told him, "Your friend, [Mr. White], is trying to make a move on your girlfriend." Mr. White denied the accusation, but it was enough to break up the party.

18. Mr. White returned to his apartment in Woodley Park.

19. Rahul, Taylor, and Mark all went back to the Silver Spring apartment. Taylor reportedly wanted Mark to return to the apartment with them to "be a witness to what had happened [between her and Mr. White] at the bar, and to help [her] tell [Rahul] what had happened."

20. They arrived back at The Blair East Apartments at approximately 2:00 am on October 13, 2013. Security footage taken in the lobby and elevator shows the group getting in the elevator together. In the footage, nothing appears out of the ordinary.

21. Mark texted a friend at approximately 2:01:05, saying "My night is becoming historically awkward." "Im [sic] about to gnaw my hand off so I can leave in the ambulance." Back at the apartment, they took shots of vodka and Rahul smoked more marijuana.

22. Tensions quickly escalated. At some time between their 2:00 am return to the apartment and 3:25 am, Rahul attacked Mark due to Rahul's false perception that Taylor was cheating on him with Mark.

23. In an alcohol fueled rage, Rahul grabbed a butcher knife and viciously stabbed and cut Mark eleven times. While Mark survived the initial wounds, he eventually succumbed to these injuries.

24. At 3:25 am, Taylor Gould called 911. In the recorded call, Taylor is clearly confused and disoriented. She professes to not know what happened.

25. The recording of the 911 call starts with Taylor reporting: "My friend is, I just, he's here and I need emergency right now." When asked "Why did you call 911, what's going on?" Taylor said: "Nothing." After a more than five minute rambling, disoriented phone call, Taylor finally reported that: "There's blood everywhere." The operator asked: "What do you mean there's blood everywhere, what happened?" To that, Taylor answered: "I don't know."

26. When police arrived, they found a "very intoxicated" Taylor at the entrance to the apartment. She had blood on her, but she did not have blood on her face or in her hair. Her hair was dry.

27. Taylor told the officers she wasn't sure what happened, and officers placed her in handcuffs and detained her outside the apartment while other officers continued inside the unit.

28. Inside, the police found Mark lying lifeless on the floor covered in blood, with Rahul laying on the ground nearby to his left, groaning and "[c]overed in blood," Rahul was also intoxicated.

29. When asked by the police what happened, Rahul said: "They were cheating. My girlfriend was cheating on me. My buddy and my girlfriend were cheating. I walked in on my buddy and my girlfriend cheating. I killed my buddy."

30. Medical technicians at the scene confirmed that Mark was dead.

31. Mark had suffered six stab wounds and five cutting injuries. One stab wound punctured a lung, and another severed his jugular vein. Mark suffered for minutes before succumbing to his wounds. All of Mark's wounds were defensive.

32. The murder weapon, a kitchen knife, was found under Mark's leg.

33. Rahul was handcuffed on the spot. Rahul and Taylor were both taken to police headquarters at about 5:00 a.m.

34. After being placed in a holding cell to await interrogation, Rahul blurted to the police officer guarding him, unsolicited: "[P]lease, sir, look, I fucked up. He tried to stab me, though" as well as, "[G]uy's a real dick. He tried to kill me and my family."

35. When police asked Rahul if he was injured and needed medical attention, he said he was not injured.

36. When he was formally interrogated later by investigator Paula Hamill for about eight hours (in total) over the course of that morning, Rahul changed his story, saying he remembered nothing about what happened.

37. When questioned, Taylor also said she did not remember what happened.

38. In a recorded jailhouse telephone call with his father, Rahul again admitted his involvement. When asked by his father what had happened, Rahul said: "Mark and I got into a fight and he tried to get a knife and then I … got the knife."

39. Rahul intentionally and maliciously stabbed and cut Mark eleven times, proximately causing Mark's death.

**Count I – Wrongful Death**
**(Battery)**

40. The preceding paragraphs 1-39 are hereby incorporated by reference as though fully set forth herein.

41. This claim is brought pursuant to Md. Code Ann., Cts. & Jud. Proc., § 3-901 *et seq.* (wrongful death claim).

42. Plaintiffs, Mr. and Mrs. Waugh, in their individual capacities as Mark Waugh's parents, bring this claim for wrongful death as Mark's beneficiaries.

43. Plaintiffs timely filed this claim within three years of the date of decedent's death.

44. In killing Mark, Rahul committed battery by intentionally touching Mark without his consent. The touching was harmful or offensive in that it caused Mark physical pain, injury or illness, and culminated in his death.

45. Rahul committed battery because, without permission, he intentionally applied trauma upon Mark's body with a knife multiple times. Rahul's touching of Mark with a knife was harmful because it caused Mark physical pain and injury, culminating in his death.

46. To wit, Rahul intentionally stabbed and cut Mark eleven times, proximately causing his death. This is evidenced by facts stated previously including, specifically, the following:

a. Mark's death was caused by multiple stab and cutting wounds.

b. Mark was stabbed in the neck, chest, twice in the left shoulder, and his jugular vein was cut.

c. When police arrived, Rahul was lying near Mark's body and was covered in blood.

d. The murder weapon was found under Mark's leg.

e. After their arrival, Rahul told police that: "They were cheating. My girlfriend was cheating on me. My buddy and my girlfriend were cheating. I walked in on my buddy and my girlfriend cheating. I killed my buddy."

f. At the police station, Rahul blurted unsolicited to a police officer: "[P]lease, sir, look, I fucked up. He tried to stab me, though" as well as, "[G]uy's a real dick. He tried to kill me and my family."

g. In a recorded call, Rahul admitted his involvement to his father: "Mark and I got into a fight and he tried to get a knife and then I ... got the knife."

47. At no time did Mark instigate or consent to this contact.

48. Defendant's wrongful acts directly and proximately caused the death of Mark Waugh.

49. As the direct and proximate result of Defendant's wrongful acts that caused Mark Waugh's death, Plaintiffs have incurred all damages cognizable under the wrongful death statute, including but not limited to pecuniary losses, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, loss of household services and funeral expenses.

WHEREFORE, Plaintiffs, individually, demand judgment against Defendant, as follows: (1) compensatory damages in an amount exceeding $75,000.00, which amount

will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

**Count II – Wrongful Death**
**(Negligence)**

50. The preceding paragraphs 1-39 are hereby incorporated by reference as though fully set forth herein.

51. This claim is brought pursuant to Md. Code Ann., Cts. & Jud. Proc., § 3-901 *et seq*. (wrongful death claim).

52. Plaintiffs, Mr. and Mrs. Waugh, in their individual capacities as Mark Waugh's parents, bring this claim for wrongful death as Mark's beneficiaries.

53. Plaintiffs timely filed this claim within three years of the date of decedent's death.

54. Rahul breached his duty to Mark to use reasonable care and to refrain from stabbing and cutting Mark, and through his conduct proximately caused Mark's death.

55. Mark was not contributorily negligent and did not assume any risk in relation to his interaction with Rahul.

56. As the direct and proximate result of Defendant's negligence that caused Mark Waugh's death, Plaintiffs have incurred all damages cognizable under the wrongful death statute, including but not limited to pecuniary losses, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, loss of household services and funeral expenses.

WHEREFORE, Plaintiffs, individually, demand judgment against Defendant, as follows: (1) compensatory damages in an amount exceeding $75,000.00, which amount will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

**Count III – Wrongful Death**
**(Gross Negligence)**

57. The preceding paragraphs 1-39 are hereby incorporated by reference as though fully set forth herein.

58. This claim is brought pursuant to Md. Code Ann., Cts. & Jud. Proc., § 3-901 *et seq.* (wrongful death claim).

59. Plaintiffs, Mr. and Mrs. Waugh, in their individual capacities as Mark Waugh's parents, bring this claim for wrongful death as Mark's beneficiaries.

60. Plaintiffs timely filed this claim within three years of the date of decedent's death.

61. Rahul, acting with reckless indifference and/or willful disregard of his duty, breached his duty to Mark to use reasonable care and to refrain from stabbing and cutting Mark, and through his conduct proximately caused Mark's death.

62. Mark was not contributorily negligent and did not assume any risk in relation to his interaction with Rahul.

63. As the direct and proximate result of Defendant's gross negligence that caused Mark Waugh's death, Plaintiffs have incurred all damages cognizable under the wrongful death statute, including but not limited to pecuniary losses, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss

of protection, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, loss of household services and funeral expenses.

WHEREFORE, Plaintiffs, individually, demand judgment against Defendant, as follows: (1) compensatory damages in an amount exceeding $75,000.00, which amount will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

**Count IV – Survival**
**(Battery)**

64. The preceding paragraphs 1-39 are hereby incorporated by reference as though fully set forth herein.

65. This claim is brought pursuant to Md. Code Ann., Estates and Trusts, § 7-401(y) *et seq.* (survival claim).

66. Plaintiff Mr. Waugh brings this claim in his capacity as the Personal Representative of the Estate of Mark Waugh.

67. Plaintiff timely filed this claim within three years of the date of decedent's death.

68. In killing Mark, Rahul committed battery by intentionally touching Mark without his consent. The touching was harmful or offensive in that it caused Mark physical pain, injury or illness, and culminated in his death.

69. Rahul committed battery because, without permission, he intentionally applied trauma upon Mark's body with a knife multiple times. Rahul's touching of Mark with a knife was harmful because it caused Mark physical pain and injury, culminating in his death.

70. To wit, Rahul intentionally stabbed and cut Mark eleven times, proximately causing his death. This is evidenced by facts stated previously including, specifically, the following:

a. Mark's death was caused by multiple stab and cutting wounds.

b. Mark was stabbed in the neck, chest, twice in the left shoulder, and his jugular vein was cut.

c. When police arrived, Rahul was lying near Mark's body and was covered in blood.

d. The murder weapon was found under Mark's leg.

e. After their arrival, Rahul told police that: "They were cheating. My girlfriend was cheating on me. My buddy and my girlfriend were cheating. I walked in on my buddy and my girlfriend cheating. I killed my buddy."

f. At the police station, Rahul blurted unsolicited to a police officer: "[P]lease, sir, look, I fucked up. He tried to stab me, though" as well as, "[G]uy's a real dick. He tried to kill me and my family."

g. In a recorded call, Rahul admitted his involvement to his father: "Mark and I got into a fight and he tried to get a knife and then I … got the knife."

71. At no time did Mark instigate or consent to this contact.

72. Between the time he was first stabbed and his death minutes later, Mark experienced pain and suffering, emotional distress, and mental anguish as he was repeatedly victimized by the Defendant.

73. As the direct and proximate result of Defendant's wrongful acts that caused Mark Waugh's death, Plaintiff has incurred all damages cognizable under the survival statute, including funeral and burial expenses, and non-economic damages.

74. Plaintiff hereby demands punitive damages, in an amount to be determined at trial. Defendant's conduct in consciously and deliberately stabbing the decedent multiple times with a butcher knife is characterized by an evil motive, intent to injure, ill will, and actual malice.

75. In support of Plaintiff's claims for punitive damages, Plaintiff refers to the facts detailed herein, and specifically the facts in paragraphs a) through g) above, and states further that Defendant Rahul Gupta became enraged at Mark due to his false perception that Mark and Taylor were cheating, and intentionally and repeatedly stabbed and cut Mark with malice and an evil motive to cause his death.

WHEREFORE, Plaintiff William T. Waugh, as Personal Representative of the Estate of Mark Waugh, deceased, demands judgment against Defendant as follows: (1) compensatory damages in an amount exceeding $75,000.00, which amount will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; (4) punitive damages to the maximum extent permitted by law; and (5) such other and further relief as this Court deems proper.

**Count V – Survival**
**(Negligence)**

76. The preceding paragraphs 1-39 are hereby incorporated by reference as though fully set forth herein.

77. This claim is brought pursuant to Md. Code Ann., Estates and Trusts, § 7-401(y) *et seq.* (survival claim).

78. Plaintiff Mr. Waugh brings this claim in his capacity as the Personal Representative of the Estate of Mark Waugh.

79. Plaintiff timely filed this claim within three years of the date of decedent's death.

80. Rahul breached his duty to Mark to use reasonable care and to refrain from stabbing and cutting Mark, and through his conduct proximately caused Mark's death.

81. Mark was not contributorily negligent and did not assume any risk in relation to his interaction with Rahul.

82. Defendant's negligence directly and proximately caused the death of Mark Waugh.

83. Between the time he was first stabbed and his death minutes later, Mark experienced pain and suffering, emotional distress, and mental anguish as he was repeatedly victimized by the Defendant.

84. As the direct and proximate result of Defendant's negligence that caused Mark Waugh's death, Plaintiff has incurred all damages cognizable under the survival statute, including funeral and burial expenses, and non-economic damages.

WHEREFORE, Plaintiff William T. Waugh, as Personal Representative of the Estate of Mark Waugh, deceased, demands judgment against Defendant as follows: (1) compensatory damages in an amount exceeding $75,000.00, which amount will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

**Count VI – Survival**
**(Gross Negligence)**

85. The preceding paragraphs 1-39 are hereby incorporated by reference as though fully set forth herein.

86. This claim is brought pursuant to Md. Code Ann., Estates and Trusts, § 7-401(y) *et seq.* (survival claim).

87. Plaintiff Mr. Waugh brings this claim in his capacity as the Personal Representative of the Estate of Mark Waugh.

88. Plaintiff timely filed this claim within three years of the date of decedent's death.

89. Rahul, acting with reckless indifference and/or willful disregard of his duty, breached his duty to Mark to use reasonable care and to refrain from stabbing and cutting Mark, and through his conduct proximately caused Mark's death.

90. Mark was not contributorily negligent and did not assume any risk in relation to his interaction with Rahul.

91. Defendant's gross negligence directly and proximately caused the death of Mark Waugh.

92. Between the time he was first stabbed and his death minutes later, Mark experienced pain and suffering, emotional distress, and mental anguish as he was repeatedly victimized by the Defendant.

93. As the direct and proximate result of Defendant's negligence that caused Mark Waugh's death, Plaintiff has incurred all damages cognizable under the survival statute, including funeral and burial expenses, and non-economic damages.

94. Plaintiff hereby demands punitive damages, in an amount to be determined at trial. Defendant's conduct in consciously and deliberately stabbing the

decedent multiple times with a butcher knife is characterized by an evil motive, intent to injure, ill will, and actual malice.

95. In support of Plaintiff's claims for punitive damages, Plaintiff refers to the following facts and states further that Defendant Rahul Gupta became enraged at Mark due to his false perception that Mark and Taylor were cheating, and intentionally and repeatedly stabbed and cut Mark with malice and an evil motive to cause his death.

a. Mark's death was caused by multiple stab and cutting wounds.

b. Mark was stabbed in the neck, chest, twice in the left shoulder, and his jugular vein was cut.

c. When police arrived, Rahul was lying near Mark's body and was covered in blood.

d. The murder weapon was found under Mark's leg.

e. After their arrival, Rahul told police that: "They were cheating. My girlfriend was cheating on me. My buddy and my girlfriend were cheating. I walked in on my buddy and my girlfriend cheating. I killed my buddy."

f. At the police station, Rahul blurted unsolicited to a police officer: "[P]lease, sir, look, I fucked up. He tried to stab me, though" as well as, "[G]uy's a real dick. He tried to kill me and my family."

g. In a recorded call, Rahul admitted his involvement to his father: "Mark and I got into a fight and he tried to get a knife and then I … got the knife."

WHEREFORE, Plaintiff William T. Waugh, as Personal Representative of the Estate of Mark Waugh, deceased, demands judgment against Defendant as follows: (1)

compensatory damages in an amount exceeding $75,000.00, which amount will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) punitive damages to the maximum extent permitted by law; and (5) such other and further relief as this Court deems proper.

Respectfully submitted,

**GRENIER LAW GROUP PLLC**

BY: Peter C. Grenier

Peter C. Grenier
1400 L Street, N.W.
Suite 420
Washington, D.C. 20005
Phone: 202-768-9600
Fax: 202-768-9604
Email: pgrenier@grenierlawgroup.com
*Counsel for Plaintiffs*

**JURY DEMAND**

Plaintiff demands a trial by jury on all matters in this action.

Peter C. Grenier

Peter C. Grenier

**CERTIFICATION PURSUANT TO RULE 1-313**

The undersigned hereby certifies that he is admitted to practice law in the State of Maryland and is a member in good standing of the Bar of the State of Maryland.

Peter C. Grenier

Peter C. Grenier